IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| MICHAEL COATNEY, | ) | 4:07CV3167 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| UNITED STATES CITIZENSHIP | ) | |
| AND IMMIGRATION and | ) | |
| GERARD HEINAUER, | ) | |
| | ) | |
| Defendants. | ) | |

Michael Coatney, a former employee of United States Citizenship and Immigration (the "Agency"), alleges that he was wrongfully discharged without due process and later reinstated upon terms which included the promise that he would receive back pay and benefits for the period between his discharge and reinstatement. Coatney brings two claims against the Agency and Gerard Heinauer, an official at the Agency: a contract claim, based on his assertion that the Agency breached its promise to provide back pay and benefits upon his reinstatement and a 42 U.S.C. § 1983 claim, asserting that the discharge which preceded his reinstatement violated his constitutional rights because procedural errors were made. Jurisdiction is based on the Tucker Act (contract claim) and federal question jurisdiction (§ 1983 claim). Defendants have filed a motion to dismiss or, in the alternative, for summary judgment. I will grant the motion to dismiss the contract claim for lack of jurisdiction because the Civil Service Reform Act of 1978, codified in various sections of 5 U.S.C. ("CSRA") provides the exclusive remedy, and will dismiss the § 1983 claim (whether construed as a § 1983 claim or a *Bivens*[1] claim) for failure to state a claim.

---

[1] *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

## BACKGROUND

Defendants' motion was characterized as a motion to dismiss for lack of jurisdiction pursuant to Rule 12(b)(1) and for failure to state a claim pursuant to Rule 12(b)(6), or, in the alternative, for summary judgment pursuant to Rule 56. (Filing 23.) To the extent the motion before me challenges jurisdiction pursuant to Rule 12(b)(1), I may consider matters outside the pleadings and both Plaintiff and Defendant have introduced evidence relevant to jurisdiction. (Filings 24, 27.)[2]

As I will grant the motion to dismiss, I do not consider the motion for summary judgment. I do, however, note the facts as agreed by the parties in connection with the motion for summary judgment when considering the facts relevant to subject matter jurisdiction. Defendants' brief complied with the local rules governing summary judgment in that their brief set forth a numbered statement of material facts indexed to the record. (Filing 25; NECivR 56.1(a).) Defendants specifically represent that they assume the facts as pled in the Amended Complaint are true for purposes of the motions before the court, however they are characterized. (Filing 25, Defs.' Br. in Supp. of Mot. at 2 n.2.) The local rules provide that "[p]roperly referenced material facts in the movant's statement [of facts] will be deemed admitted unless controverted by the opposing party's response." NECivR 56.1.

Plaintiff responded to Defendants' brief by stating that he "*generally* accepts Defendant's [sic] statement of facts for the limited purpose of addressing Defendant's motion to dismiss." (Filing 26, P.'s Br. in Resp. at 2 (emphasis added).) Plaintiff

---

[2] A district court is permitted to resolve a Rule 12 (b)(1) motion by considering matters outside the pleadings. If it does so, the attack on jurisdiction is "factual" rather than "facial" and the submission of evidence does not convert the Rule 12(b)(1) motion to a Rule 56 motion for summary judgment. *Osborn v. United States*, 918 F.2d 724, 728-30 & n.6 (8th Cir. 1990) (distinguishing between "facial" and "factual" attacks on jurisdiction and explaining the standards applicable to both).

conditioned this acceptance by stating that he believes that the last two facts in Defendants' statement of facts are "incomplete" in that they recite that Plaintiff held a competitive position specifically governed by the Civil Service Reform Act but "do not adequately address" the alleged contract pursuant to which Plaintiff was reinstated and promised back pay and benefits. (Filing 26, P.'s Br. in Resp. at 2.) Plaintiff submitted as evidence a December 1, 2006 letter offering a settlement which, among other things, obligated the Agency to provide Plaintiff with back pay and benefits.[3] (Filing 27-2.) I consider Plaintiff to have admitted all of Defendants' statement of facts for purposes of the Rule 12(b)(1) motion to dismiss and to assert an additional material fact: that the letter was an offer of settlement which was accepted when he returned to work and evidences a contract.[4] Defendants accept

---

[3]I consider Plaintiff's evidence despite lack of authentication because Defendants did not object to that evidence and accepted Plaintiff's characterization of it.

[4]Plaintiff's brief is not a model of clarity. It states that "Defendant's motion for summary judgment is based on the law cited in support of the motion for summary judgment; consequently and Defendants should be instructed to file an answer." (Filing 26, P.'s Br. in Resp. at 1 (spelling and grammar as in original).) This statement is footnoted, and the footnote adds to the confusion. It provides:

> Defendants also offer their motion, in the alternative, as a motion for summary judgment. However, it appears that this is based on their position that the CSRA does not allow claims such as this. As a result, Plaintiff has not offered any counter evidence at this time. However, *if the Court intends to treat this as a motion for summary judgment, Plaintiff would ask leave to produce his affidavit stating that he did reach a contract agreement with Defendants*, meaning that Defendants would not prevail on summary judgment, either.

(Filing 26, P.'s Br. in Resp. at 1 n.1 (emphasis added).) I understand Plaintiff to indicate that if he clearly understood the motion to be one for summary judgment, he would have submitted an affidavit to the effect that he considered the December 1, 2006 letter to be an offer which was accepted when he returned to work. I deny as

Plaintiff's characterization of the December 1, 2006 letter as fact for purposes of the motion before the court, whether characterized as a motion to dismiss or for summary judgment. (Filing 30, Defs.' Reply Br. at 4 n.2.)

These are the undisputed facts material to the motion before me to the extent it is characterized as a Rule 12(b)(1) motion. (To the extent the motion is characterized as a Rule 12(b)(6) motion to dismiss for failure to state a claim, I consider only the allegations of the Amended Complaint, taken as true for purposes of the motion.) The facts as set forth below are those set forth in Defendants' brief and as they are numbered in that brief, with slight modifications for clarity, and with the addition of fact no. 12A, which I have inserted to reflect the parties' understanding regarding the December 1, 2006 letter (as described in the preceding paragraph of this memorandum and order).

## STATEMENT OF FACTS

1.      Michael Coatney resides in the State of Nebraska. (Amended Complaint, ¶ 3, hereinafter "Amd. Comp. ¶ ____".)

2.      Defendant United States Citizenship and Immigration (hereinafter "the Agency"), is an agency of the United States government. (Amd. Comp. ¶ 4 and Caption.)

---

moot Plaintiff's request for leave to produce such an affidavit, as I have assumed for purposes of the motion before me–however it is characterized–that the December 1, 2006 letter constitutes an offer for to settle the dispute regarding Plaintiff's termination which was accepted when Plaintiff returned to work and was reinstated. In other words, I accept Plaintiff's characterization of the December 1 letter as a contract of settlement. So do Defendants. (Filing 30, Defs.' Reply Br. at 4 n.2.)

3.      Defendant Gerard Heinauer is and was a resident of Omaha, Douglas County, Nebraska during the events at issue. (Amd. Comp. ¶ 6.)

4.      After completing thirteen years in the United States Armed Services, Coatney was hired by the Agency in Lincoln, Nebraska, in September 2003, as a term employee. (Amd. Comp. ¶ 7). Coatney was hired as a GS-7 with the promise of full-time employment with standard promotion potential. (Amd. Comp. ¶ 7.)

5.      In January of 2005, Coatney was informed that he would not be, and could not be, promoted to a GS-9. (Amd. Comp. ¶ 8.)

6.      Coatney contacted Senator Hagel's office to seek help. (Amd. Comp. ¶ 9). Upon Senator Hagel's inquiry, the Agency informed the senator that it could not immediately promote Coatney, but promised a remedy for the situation. (Amd. Comp. ¶ 9). Nonetheless, the Agency did not remedy the situation, and the work environment began to rapidly deteriorate. (Amd. Comp. ¶ 9.)

7.      Over the next 16 months, the work environment became quite hostile: Coatney was moved from product line to product line; and he was placed in positions for which he had not been trained. (Amd. Comp. ¶ 10.)

8.      Coatney was disliked because he raised questions about the way his promotion was handled, and because he was a veteran. (Amd. Comp. ¶ 11.)

9.      The work environment remained hostile until Coatney was wrongfully discharged, without due process, effective June 20, 2006. (Amd. Comp. ¶ 12; Filing 27-2.)

10. Six months after Coatney's termination, the Agency and Defendant Heinauer offered Coatney $25,000.00 to forego his claims against the Agency and any individuals. (Amd. Comp. ¶¶ 13, 18).

11. Mr. Coatney rejected this offer and the Agency and Defendant Heinauer counter-offered in a December 1, 2006 letter by offering him his job back, with full promotion potential, six months back pay and benefits (from the wrongful termination date–June 20, 2006, to his return date–December 11, 2006), and expungement of his employment records. (Amd. Comp. ¶¶ 14, 19; Filing 27-2.)

12. Defendant Heinauer had the power to make the offer in the December 1, 2006 letter and to bind the Agency by contract. (Amd. Comp. ¶ 15.)

12A. The December 1, 2006 letter was an offer of settlement which was accepted when Coatney returned to work on December 11, 2006 and evidences a contract. (Filing 27-2; Filing 30, Defs.' Reply Br. at 4 n.2.)

13. Coatney returned to work and resumed his position as a Center Adjudications Officer on December 11, 2006, but he discovered the work environment was even more hostile and untenable. (Amd. Comp. ¶¶ 16, 20.)

14. Mr. Coatney felt forced to resign his position and did so on December 12, 2006. (Amd. Comp. ¶ 16; Frazier Decl. ¶ 3.)

15. Despite Coatney's acceptance of the offer in the December 1, 2006 letter, Defendants did not fulfill their promises because they have not paid Coatney back pay and interest. (Amd. Comp. ¶ 21.) This breach caused Coatney to suffer damages. (Amd. Comp. ¶ 22.)

16.     Defendants wrongfully terminated Coatney effective June 20, 2006, without providing the due process to which he was entitled. (Amd. Comp. ¶ 24; Filing 27-2.) Defendant Heinauer, acting on behalf of the Agency, admitted that the Defendants made procedural errors in handling Coatney's discipline and termination while employed at the Agency. (Amd. Comp. ¶ 24; Filing 27-2.) Specifically, Defendants intentionally failed to provide two or three mandatory performance reviews, as required every ninety days, for eight months prior to Coatney's wrongful termination, and Defendants terminated Coatney without following Agency rules and procedures for discipline and termination. (Amd. Comp. ¶¶ 24a, 24b.)

17.     Barbara Velarde is employed by the United States Citizenship and Immigration Services (CIS or the Agency) in Washington, D.C.. Her office is located at 20 Massachusetts Avenue, N.W., Washington, D.C. 20529. CIS is an agency within the Department of Homeland Security. Velarde is the Chief of Service Center Operations nationwide. (Filing 24, Decl. of Barbara Velarde, paragraph 1 (hereinafter, "Velarde Decl. ¶ ___").)

18.     Ms. Velarde is the first-line supervisor of named defendant Gerard Heinauer, who is the Director at the Nebraska Service Center (NSC). (Velarde Decl. ¶ 2.)

19.     Ms. Velarde has reviewed the Amended Complaint and the allegations against Mr. Heinauer, and, to the best of her knowledge, at all times relevant to the complaint, Mr. Heinauer's interactions with and actions related to Mr. Coatney were in good faith, were within his official capacity as Director of the NSC, were within the scope of his employment and were taken in furtherance of agency business. (Velarde Decl. ¶ 3.)

20.     Randy Frazier is employed by the United States Citizenship and Immigration Services in Lincoln, Nebraska. His office is located at 1301 W.

Highland Boulevard, Lincoln, Nebraska 68521.  The United States Citizenship and Immigration Services is an agency within the Department of Homeland Security.  Mr. Frazier is the Assistant Center Director (Administration) at the Nebraska Service Center in Lincoln.  Mr. Frazier has reviewed Mr. Coatney's amended complaint. (Filing 24, Declaration of Randy Frazier, paragraph 1), (hereinafter, "Frazier Decl. ¶ ___".)

21. As Assistant Center Director (Administration) at the Nebraska Service Center, Mr. Frazier is responsible for the administrative division, which as part of its responsibilities, handles all personnel issues that arise at Nebraska Service Center. This includes issues relating to hiring, promotions, discipline, payroll and benefits, Union issues and grievances, EEO complaints, and all other day-to-day administrative tasks relating to all personnel issues that arise at the Nebraska Service Center. (Frazier Decl. ¶ 2.)

22. Based upon his position, Mr. Frazier is one of the custodians of records related to personnel issues at the Nebraska Service Center.  Mr. Frazier has personally researched and reviewed the records of their office and has confirmed that Mr. Coatney was a federal civil service employee of the Nebraska Service Center from September 7, 2003 through December 12, 2006.  Based upon Mr. Frazier's review of the records, Mr. Coatney held two competitive positions within the competitive service with the Nebraska Service Center during his employment.  From entry on duty until June 11, 2005, Mr. Coatney was a term employee in the position of Applications Adjudicator.  He was subsequently promoted to a permanent appointment as a Center Adjudications Officer (CAO), GS-1801, effective June 12, 2005, and he held this position until he was removed effective June 20, 2006.  When he was reinstated on December 11, 2006 pursuant to the December 1, 2006 letter, he was reinstated to the same position of Center Adjudications Officer, with full back pay and interest, as if he had never left.  He held the position for one day after reinstatement, until he resigned on December 12, 2006.  (Frazier Decl. ¶ 3, Filing 27-2 (December 1 letter).)

23. Both of Mr. Coatney's federal competitive positions within the competitive service at the Nebraska Service Center were specifically governed by 5 U.S.C. § 2102 and 5 C.F.R. § 212.101 (each defining competitive service), and by other statutes and regulations arising under the Civil Service Reform Act of 1978. (Frazier Decl. ¶ 4.)

## THE CONTRACT CLAIM

The contract claim is based on Plaintiff's assertion that after he was wrongfully terminated by the Agency on June 30, 2006, he formed a contract with the Agency pursuant to which he and the Agency settled the dispute over Plaintiff's termination, and that the Agency has breached this contract. Plaintiff alleges that the terms of the contract are set forth in a December 1, 2006 letter, and that the Agency breached its obligation under that contract to provide back pay and interest.

Plaintiff asserts that this court has jurisdiction over his contract claim pursuant to the Tucker Act, 28 U.S.C. § 1491(a)(1). (Filing 26, P.'s Br. in Resp. at 2.) The Tucker Act grants the *United States Court of Federal Claims* "jurisdiction to render judgment upon any claim against the United States founded . . . upon any express or implied contract with the United States . . . ." 28 U.S.C. § 1492(a)(1) (emphasis added). As the Tucker Act grants jurisdiction only to the United States Court of Federal Claims, I assume that Plaintiff intended to assert that this court has jurisdiction pursuant to the Little Tucker Act, which grants district courts original jurisdiction, concurrent with the Court of Federal Claims, over "[a]ny . . . civil action or claim against the United States, *not exceeding $10,000 in amount*, founded . . . upon any express or implied contract with the United States . . . ." 28 U.S.C. § 1346(a)(2) (emphasis added).

It is undisputed that the position from which Plaintiff was terminated, and to which he was reinstated pursuant to the December 1, 2006 letter, was a competitive

position within the competitive service which he held by appointment and which was governed by statutes and regulations arising under the CSRA. (Statement of Facts, *supra*, nos. 22, 23.) Though Plaintiff does not word his argument this clearly, Plaintiff appears to assert that when he was *reinstated*, he became a contract employee by virtue of the settlement agreement pursuant to which he was reinstated such that the CSRA does not govern enforcement of the settlement agreement. I reject this proposition.

Determination whether the CSRA provides the exclusive remedy begins with acknowledgment that "the CSRA was intended to be a comprehensive and exclusive legislative scheme to govern federal personnel matters." *Bobula v. United States Dep't of Justice*, 970 F.2d 854, 857 (Fed. Cir. 1992). In *Bobula*, the plaintiff asserted Little Tucker Act jurisdiction over her claim that the Justice Department breached a settlement agreement resolving grievances when it reassigned her to another United States Attorney's office. It was undisputed that the settlement agreement which served as the basis of Bobula's claims "arose from personnel grievances that are within the ambit of the CSRA." *Id.* The court rejected Bobula'a argument that the federal district court had jurisdiction over the breach of the settlement agreement, noting that

> [s]ince the CSRA is an integrated scheme, and since the settlement agreement arose from this integrated scheme, the settlement agreement must be enforced within the procedures provided for in the CSRA or not at all. Therefore, the settlement agreement may not be enforced as a contract outside the CSRA in any forum, including the district court under the Little Tucker Act.

*Id.* at 858.

In *Goewert v. United States*, 41 Fed. Cl. 701 (1998) an employee in the competitive service alleged that his constructive discharge breached an implied

-10-

contract and alleged Tucker Act jurisdiction over this contract claim. The court of federal claims observed that the "[p]laintiff's classification of 'competitive service' both enables and commands him to seek redress under the CSRA through the Merit System Protection Board ("MSPB") . . . ." *Id.* at 704. The court found no Tucker Act jurisdiction, as "[t]his court has squarely held that the MSPB has 'exclusive and continuing jurisdiction over all matters relating to a complainant's . . . termination, subsequent reinstatement, and back pay award.'" *Id*. *(quoting Shellerman v. United States*, 9 Cl. Ct. 452, 457 (1986).)

*Schooling v. United States*, 63 Fed. Cl. 204 (Ct. Fed. Claims 2004) is in accord. Citing *Bobula* with approval, the court of federal claims rejected Tucker Act jurisdiction over the claim of an Internal Revenue Service employee that the IRS breached a settlement agreement concerning the scope of disciplinary action. *Id.* at 206-08. Since the plaintiff was a federal employee covered by the CSRA, the plaintiff was "not entitled to enforce the settlement as a contract outside the CSRA in any other forum . . . ." *Id.* at 208.

Although Coatney's claim relies on a settlement agreement expressly providing for the payment of money, unlike the claims of the plaintiffs in *Bobula*, *Gowert*, and *Schooling*, I rely upon on the broad language of *Bobula*, *Gowert*, and *Schooling*, and the fact that the CSRA is a comprehensive scheme to govern federal personnel matters and find that when a federal employee in the competitive service reaches a settlement agreement over an employment dispute, the CSRA provides the exclusive remedy for enforcement of that settlement agreement. This court does not have Little Tucker Act jurisdiction over Coatney's contract claim.

The cases cited by Plaintiff do not support his position. None hold that a settlement agreement can create Little Tucker Act jurisdiction when the underlying employment dispute is clearly one to which the CSRA applies. For instance, although *United States v. Hopkins*, 427 U.S. 123, 130 (1976) found that the Tucker Act could

-11-

provide jurisdiction over contracts of employment as well as those for goods and services, its ultimate holding was that Court of Claims erred when it found that the employee's relationship with the Army and Air Force Exchange was based on an implied contract, as it erroneously assumed that Army and Air Force Exchange employees could never serve by appointment.

## THE § 1983 CLAIM

This court has federal question jurisdiction to consider Plaintiff's § 1983 claim. I turn to the question whether the § 1983 claim should be dismissed under Rule 12(b)(6) for failure to state a claim. When confronted with a Rule 12(b)(6) motion, all the factual allegations contained in the complaint are accepted as true, and the complaint is reviewed to determine whether its allegations show that the pleader is entitled to relief. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007). If the complaint does not state "enough facts to state a claim to relief that is plausible on its face," it must be dismissed for failure to state a claim. *Id.* at 1974.

The Amended Complaint alleges that Defendants wrongfully terminated Coatney effective June 20, 2006, without providing the due process to which he was entitled. (Amd. Comp. ¶ 24). It alleges that Defendant Heinauer, acting on behalf of the Agency, admitted that the Defendants made procedural errors in handling Coatney's discipline and termination while employed at the Agency. (Amd. Comp. ¶ 24.) Specifically, the Amended Complaint asserts that Defendants intentionally failed to provide two or three mandatory performance reviews, as required every ninety days, for eight months prior to Coatney's wrongful termination, and that Defendants terminated Coatney on June 20, 2006 without following Agency rules and procedures for discipline and termination. (Amd. Comp. ¶¶ 24a, 24b).

The essential elements of a § 1983 claim are conduct committed by a person acting under color of state law which deprived the plaintiff of rights, privileges, or

immunities secured by the Constitution or laws of the United States. *Dubose v. Kelly*, 187 F.3d 999, 1002 (8th Cir. 1999). The Amended Complaint alleges that Defendants deprived Plaintiff of certain rights. Neither the Agency nor Heinauer was a state actor, neither was acting under color of state law, and the Amended Complaint does not allege that Defendants' actions took place under color of state law–nor could it. The Amended Complaint fails to state a § 1983 claim.

As § 1983 does not provide for a right of action against federal officials acting under federal authority, when liberally construed, the claim against Heinauer may be an attempt to plead a *Bivens* action for alleged constitutional violations. *See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). However, the comprehensive remedial scheme of the CSRA preempts *Bivens* remedies for injuries arising from personnel actions governed by the CSRA. *See, e.g.*, *Bush v. Lucas,* 462 U.S. 367, 388 (1983) (despite assumption that existing CSRA remedies did not provide complete relief, finding no *Bivens* relief for federal employee covered by CSRA because CSRA was "elaborate remedial system that has been constructed step by step, with careful attention to conflicting policy considerations"); *Russell v. U.S. Dep't of the Army*, 191 F.3d 1016, 1020 (9th Cir. 1999) (Ninth Circuit has "consistently held that the CSRA preempts *Bivens* actions and other suits for constitutional violations arising from governmental personnel actions"); *McIntosh v. Turner*, 861 F.2d 524, 525-27 (8th Cir. 1988) (CSRA precludes *Bivens* remedy).

**CLARIFICATION OF DEFENDANTS**

The motion before me is based on the Amended Complaint (filing 22), which was filed pursuant to Fed. R. Civ. P. 15(a) before service of a responsive pleading. Although the original complaint named Alice Wiechert as a defendant, the Amended Complaint does not name Ms. Wiechert as a defendant. As the Amended Complaint superseded the original complaint, Ms. Wiechert ceased to be a defendant upon the

filing of the Amended Complaint. 6 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure*, § 1476 at 556-58 (2d Ed. 1990) (amended complaint filed pursuant to Rule 15(a) supersedes the original complaint). I will direct the Clerk of the court to amend the docket sheet to reflect that Ms. Wiechert is not a defendant.

For the foregoing reasons I will dismiss the contract claim pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction and will dismiss the remaining claim, whether construed as a § 1983 claim or a *Bivens* claim, pursuant to Rule 12(b)(6) for failure to state a claim.

Accordingly,

IT IS ORDERED:

1. The Clerk of the Court shall modify the docket sheet maintained for this action to reflect that Alice Wiechert ceased to be a defendant on November 12, 2007, when the Amended Complaint was filed;

2. The motion in filing 23 is granted as follows: the contract claim is dismissed pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction and the remaining claim, whether construed as a § 1983 claim or a *Bivens* claim, is dismissed pursuant to Rule 12(b)(6) for failure to state a claim; and

3. Judgment shall be entered by separate order.

March 5, 2008.                    BY THE COURT:

                                  *s/Richard G. Kopf*
                                  United States District Judge